**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**GERRY CALVIN**                                                                    **PLAINTIFF**

**v.**                                    **Case No.: 4:21-cv-00224-LPR**

**JOHN RANDALL, individually and in his
official capacity,** *et al.*                                                **DEFENDANTS**


<u>**ORDER**</u>

Plaintiff Gerry Calvin alleges that Defendant John Randall, the Chief of Police of Menifee, Arkansas, crashed a sweet sixteen birthday party that Mr. Calvin was hosting for his cousin. The unwelcomed guest allegedly frightened the children present at the party, nearly hit Mr. Calvin with a truck, thrice threatened to shoot Mr. Calvin in the head, and told Mr. Calvin that he could be taken to jail. Mr. Calvin claims that Chief Randall's actions violated Mr. Calvin's rights under the United States Constitution, the Arkansas Constitution, and Arkansas common law.

Mr. Calvin brings this lawsuit against Chief Randall as well as the Mayor of Menifee, the City of Menifee, and members of the Menifee City Council.[1] Mr. Calvin sues the members of the Menifee City Council in both their individual and official capacities.[2] Mr. Calvin alleges that the City Council members failed to adequately train and supervise Chief Randall, and that those failures led to Chief Randall's allegedly unlawful conduct.

The City Council members filed the pending Motion to Dismiss Mr. Calvin's individual-capacity claims against them.[3] The City Council members argue that: (1) Mr. Calvin has failed to

---

[1] Compl. (Doc. 2) at 1. The Complaint contains two separate paragraphs numbered "24." The Court will refer to the first paragraph 24 as "24(1)" and the second paragraph 24 as "24(2)."

[2] *Id.* One City Council member, Ronnie Williams, was named solely in an individual capacity. *Id.* The other City Council members were all named in both their individual and official capacities. *Id.*

[3] Defs.' Mot. to Dismiss (Doc. 9); Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 10). The Defendants' Motion relates solely to Mr. Calvin's individual-capacity claims. The Court takes no position on the sufficiency of Mr. Calvin's

state claims against them; and (2) they are shielded from suit by qualified immunity and Arkansas statutory immunity.[4]  For the reasons stated below, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.  The Court grants Mr. Calvin leave to amend his Complaint. If Mr. Calvin does not amend his Complaint within twenty-one days of the date of this Order, the Court will dismiss his 42 U.S.C. § 1983 and ACRA individual-capacity claims against the City Council members.

## I.  BACKGROUND[5]

On the evening of November 21, 2021, Mr. Calvin was hosting a sweet sixteen birthday party for his cousin at his home in Plummerville, Arkansas.[6]  During this party, some of the children noticed (and were frightened by) a black truck that was "lurking around the party."[7]  Mr. Calvin checked his surveillance cameras and saw the black truck coming through the gates and entering his property.[8]  The black trucked pulled up to the front of Mr. Calvin's house.[9]  Mr. Calvin saw "two flashes," which prompted him to "go outside to see what was happening."[10]

Mr. Calvin went outside and saw an individual, "later identified as [Menifee Chief of Police] John Randall," getting back into the black truck.[11]  Chief Randall had been "taking pictures

---

official-capacity claims against the City Council members, nor does the Court take any position on the sufficiency of Mr. Calvin's claims against the City of Menifee, the Mayor of Menifee, or Chief Randall.

[4] Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 10) at 6–7; Reply in Supp. of Defs.' Mot. to Dismiss (Doc. 14) at 3–4.

[5] The background facts are taken from allegations in Mr. Calvin's Complaint.  These allegations are taken as true for purposes of this Order.

[6] Compl. (Doc. 2) ¶¶ 12–13.

[7] Id. ¶¶ 13–14.

[8] Id. ¶ 14.

[9] Id.

[10] Id. ¶ 15.

[11] Id. ¶¶ 14–15.

of [Mr. Calvin's] house."[12]  When Mr. Calvin questioned him, Chief Randall began driving the truck towards Mr. Calvin and "almost hit Mr. Calvin."[13]  Chief Randall then asked Mr. Calvin three times if Mr. Calvin "want[ed] a bullet in [his] head."[14]  Chief Randall also "pulled his gun out so that it was visible."[15]  Finally, "Chief Randall threatened to take Mr. Calvin to jail."[16]

In light of his actions at the birthday party, "Chief Randall was placed on administrative leave until January 15, 2021."[17]  Mayor Green "recommended that Chief Randall be terminated."[18]  Despite Mayor Green's recommendation, the Menifee City Council "voted to reinstate Chief Randall."[19]

## II.  LEGAL STANDARD

A complaint is subject to a 12(b)(6) dismissal when it "fail[s] to state a claim upon which relief can be granted."[20]  To survive dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[21]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22]  "Factual allegations are taken to be true at the motion-to-dismiss stage because the plaintiff has not had a full opportunity to

---

[12] *Id.* ¶ 14.

[13] *Id.* ¶ 16.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* ¶ 17.

[19] *Id.*

[20] Fed R. Civ. P. 12(b)(6).

[21] *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[22] *Iqbal*, 556 U.S. at 678.

conduct discovery and thereby uncover facts that support his or her claim."[23]  But a court does not need to accept a plaintiff's "conclusory statements" or "naked assertion[s] devoid of further factual enhancement."[24]

## III. DISCUSSION

Mr. Calvin brings individual-capacity claims against the City Council members under both federal and Arkansas law.[25]  Mr. Calvin's federal law claims, brought under 42 U.S.C. § 1983, are that the City Council members inadequately trained and supervised Chief Randall.[26]  Mr. Calvin brings similar failure-to-supervise/failure-to-train claims under the Arkansas Civil Rights Act (ACRA).[27]  Additionally, Mr. Calvin brings state common law claims that the City Council members were negligent in failing "to properly protect" Mr. Calvin because Chief Randall "was not properly trained, supervised, or retained."[28]

Because the Court is addressing the City Council members' Motion to Dismiss, the Court's focus is on Mr. Calvin's factual allegations that relate to the City Council members and whether

---

[23] *Ashley v. U.S. Dep't of Interior*, 408 F.3d 997, 1000 (8th Cir. 2005).

[24] *Retro Television Network, Inc. v. Luken Commc'ns*, 696 F.3d 766, 768 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

[25] Compl. (Doc. 2) ¶¶ 23–31.

[26] *Id.* ¶¶ 1, 23–27.  Mr. Calvin's Complaint indicates that he believes the City Council members also improperly hired and retained Chief Randall.  *See id.* ¶ 24(2).  It is unclear to the Court whether Mr. Calvin intends for these hiring and retention issues to be separate bases of liability or rather to bolster the failure-to-supervise/failure-to-train claims.  In any event, the Complaint falls far short of being sufficient for either purpose.  Mr. Calvin makes no factual allegations whatsoever about the process that led to Chief Randall's hiring.  As for the improper-retention issue, the only factual allegation in the Complaint is that the City Council voted to reinstate Chief Randall *after* Chief Randall's allegedly unlawful conduct.  *See Marsh v. Phelps Cnty.*, 902 F.3d 745, 755 (8th Cir. 2018) (stating that information learned after the subordinate's unconstitutional acts occurred is "irrelevant to the inquiry before this court").  As Defendants note, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 10) at 6 (quoting *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)).  The City Council members' decision to reinstate Chief Randall after the encounter with Mr. Calvin could not have caused the conduct that Mr. Calvin alleges violated his constitutional rights, and Mr. Calvin has not alleged some separate injury flowing from the decision to reinstate Chief Randall.

[27] Compl. (Doc. 2) ¶¶ 1, 26.

[28] *Id.* ¶ 30.

those allegations are sufficient to allow the Court "to draw the reasonable inference" that one or more of the City Council members are "liable for the misconduct alleged."[29]   Mr. Calvin's allegations that relate to his claims against the City Council members are as follows:

- "On other occasions, [Chief] Randall had threatened, harassed[,] and used unlawful force without consequences."[30]

- The City Council members' "failure in hiring, to train, supervise, and retaining" Chief Randall led to Chief Randall's actions in this case.[31]

- The City Council members' "decisions and practices [] which tolerate [Chief Randall's] misconduct [] were tantamount to official policies" that led to Chief Randall's actions in this case.[32]

- The City Council members voted to reinstate Chief Randall despite Mayor Green's recommendation that Chief Randall's employment be terminated.[33]

- The City Council members were negligent because their failure to properly train, supervise, and retain Chief Randall "fell below the applicable standards of care."[34]

As discussed below, these allegations are woefully inadequate.  Most of these allegations are wholly conclusory statements.  And none are sufficient (on their own or in combination with anything else in the Complaint) to state a supervisory-liability claim or overcome the City Council members' assertion of qualified immunity.[35]

---

[29] *Iqbal*, 556 U.S. at 678.

[30] Compl. (Doc. 2) ¶ 24(2).

[31] *Id.* ¶ 24(2).

[32] *Id.* ¶ 24(1).

[33] *Id.* ¶ 17.

[34] *Id.* ¶ 30.

[35] The Court does not rule on whether Mr. Calvin has sufficiently pled a negligence claim on the merits because the City Council members' only argument as to Mr. Calvin's negligence claim is that they are immune under Arkansas's immunity statute.  *See infra* note 78.

*A. Federal Claims*

A government official may be personally liable under § 1983 when that official "directly participated in the constitutional violation, or if his [or her] failure to train or supervise the offending actor caused the deprivation."[36]  Mr. Calvin does not allege that any of the City Council members were present, much less directly involved in, Chief Randall's allegedly unconstitutional conduct.  Indeed, Mr. Calvin titles his federal claims against the City Council members as "supervisory claims."[37]

"[A] supervisor may be held individually liable under § 1983 . . . if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights."[38]  To succeed on the merits of his supervisory-liability claims, Mr. Calvin must eventually be able to prove: (1) that the City Council members "had notice of a pattern of unconstitutional acts committed by" Chief Randall; (2) that the City Council members were "deliberately indifferent to or tacitly authorized" Chief Randall's unconstitutional acts; (3) that the City Council members "failed to take sufficient remedial action;" and (4) that the City Council members' failures "proximately cause[ed] injury to" Mr. Calvin.[39]

Before Mr. Calvin can even try to satisfy all of the elements on the merits, however, he must be able to overcome the City Council members' assertion of qualified immunity.[40] "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity

---

[36] *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997)).

[37] Compl. (Doc. 2) at 6.

[38] *Wever v. Lincoln Cnty.*, 388 F.3d 601, 606 (8th Cir. 2004).

[39] *Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019) (internal quotations omitted).

[40] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) ("Qualified immunity is an immunity from suit rather than a mere defense to liability.") (internal quotations omitted); Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 10) at 6 (asserting qualified immunity); Reply in Supp. of Defs.' Mot. to Dismiss (Doc. 14) at 3 (same).

must show that they are entitled to qualified immunity on the face of the complaint."[41]   In the

Eighth Circuit, it appears that the test for qualified immunity in a supervisory-liability claim is

whether the plaintiff is able to satisfy the first two prongs of the just-described merits test.[42]   Thus,

dismissal of Mr. Calvin's Complaint on the basis of qualified immunity is proper if Mr. Calvin

failed to sufficiently allege that the City Council members: "(1) received notice of a pattern of

unconstitutional acts committed by [Chief Randall], and (2) [were] deliberately indifferent to or

authorized those acts."[43]

The Eighth Circuit has described the first prong as a "rigorous standard."[44]   Mr. Calvin

must allege facts that raise a reasonable inference that the City Council members "had notice of a

pattern of conduct by" Chief Randall "that violated a clearly established constitutional right."[45]

"Allegations of generalized notice are insufficient," and the "other misconduct must be very

---

[41] *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (internal quotations omitted).

[42] *Compare Perkins*, 915 F.3d at 524 (stating the merits test), *with Marsh*, 903 F.3d at 754 (quoting *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015)) (stating the qualified-immunity test).   It does seem somewhat odd that the test for qualified immunity would simply be the first two prongs of the merits test.   But Eighth Circuit precedent clearly indicates that the two tests are essentially the same.   Perhaps the key difference is that the qualified-immunity inquiry requires proof of notice of a pattern of violations of *clearly established* constitutional rights.   *Krigbaum*, 808 F.3d at 340.   Once a plaintiff reaches the liability phase, the qualified immunity defense must have either been defeated or not raised, so the clearly-established element is no longer at issue.   In any event, whether this Court treats its analysis as one on qualified immunity or one on the merits is immaterial.   Under both frameworks, Mr. Calvin must sufficiently allege notice of a pattern of unconstitutional conduct and deliberate indifference of that conduct.   He has not.

[43] *Krigbaum*, 808 F.3d at 340.

[44] *Id.*

[45] *Id.*   It is difficult to discern precisely which of his constitutional rights (much less which "clearly established" constitutional rights) Mr. Calvin is alleging were violated in this case and exactly how Chief Randall allegedly violated those rights.   Mr. Calvin does assert that his "right to be free from excessive force was well established at the time such that a reasonable officer would be aware of that standard."   Compl. (Doc. 2) ¶ 25.   But at different points in his Complaint, Mr. also invokes the Fifth, Eighth, and Fourteenth Amendments.   *See id* ¶¶ 1, 19, 26, 34; *see also id.* at 9.   Additionally, Mr. Calvin claims that Chief Randall's actions "amounted to . . . invasion of privacy, abuse of power[,] and assault," *id.* ¶ 23, and that Mr. Calvin "had the right to be free from threats of death . . . and from the threats of arrest," *id.* ¶¶ 34(a)–(b).

In addition to granting Mr. Calvin leave to amend his Complaint to provide additional factual allegations, the Court invites Mr. Calvin to clarify exactly which of his constitutional rights were violated by Chief Randall's alleged misconduct and how.

similar to the conduct giving rise to liability."[46]  The only allegation in Mr. Calvin's Complaint that even comes close to addressing the notice prong of the qualified-immunity test is his allegation that "[o]n other occasions, [Chief] Randall had threatened, harassed, and used unlawful force without consequences."[47]  But that's not enough.  The allegation is just a legal conclusion.  It is not an allegation of facts.  Without more specific factual allegations, the Complaint cannot be read to allege past unlawful conduct by Chief Randall.  Moreover, without more specific factual allegations, the Court has no ability to draw a reasonable inference that these other occasions were "very similar to" Chief Randall's allegedly unlawful conduct in the case at bar.[48]

In any event, Mr. Calvin does not allege that the City Council members actually knew about these other occasions.  Nor does Mr. Calvin allege that these other occasions occurred with a sufficient frequency or in a manner that would put the City Council members on notice of Chief Randall's allegedly unlawful conduct.[49]

---

[46] *Krigbaum*, 808 F.3d at 340.

[47] Compl. (Doc. 2) ¶ 24(2).

[48] *Krigbaum*, 808 F.3d at 340.  Mr. Calvin's allegation that the City Council members' "decisions and practices . . . tolerate[d] such misconduct and were tantamount to official policies" also fails to move the needle in his favor on the first prong of the qualified-immunity test.  Compl. (Doc. 2) ¶ 24(1).  Whether there is an "official policy" is not all that relevant to an individual-capacity claim.  *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) ("Personal capacity claims . . . do not require proof of any policy . . . .").  *But see Jackson v. Nixon*, 747 F.3d 537 (8th Cir. 2014) (stating that a supervisor could be sued in his or individual capacity based on the supervisor's personal involvement in "creating, applying, or interpreting a policy that gives rise to unconstitutional conditions") (internal quotations omitted).  Even if the alleged policy were relevant to Mr. Calvin's individual-capacity claims, he provides no factual information about that alleged policy.  Instead, the statement is almost entirely conclusory.  The only *factual* allegation that the Court could pull from this is that the City Council members "tolerate[d] such misconduct."  Compl. (Doc. 2) ¶ 24(1).  While the word "tolerate" does imply some level of knowledge, it is insufficient for the same reasons Mr. Calvin's allegation about the "other occasions" of Chief Randall's misconduct is insufficient.  That is, this allegation does not say what the City Council members knew, had notice of, or otherwise tolerated.  Therefore, the Court has no way of drawing a reasonable inference that the allegedly tolerated misconduct was "very similar to" Chief Randall's alleged misconduct in the case at bar.  *Krigbaum*, 808 F.3d at 340.

[49] *See Wever*, 388 F.3d at 607 ("[A] single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability.") (emphasis removed) (quoting *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989)).

The second prong, deliberate indifference, "is a subjective standard" that requires Mr. Calvin to prove that the City Council members "*personally knew* of the constitutional risk posed by [their] inadequate training and supervision" of Chief Randall.[50]  Because Mr. Calvin has failed to sufficiently allege that the City Council members were even on notice of Chief Randall's allegedly unconstitutional conduct in the first place, it necessarily follows that Mr. Calvin has failed to sufficiently allege facts supporting the City Council members' subjective deliberate indifference to the constitutional risk posed by their allegedly inadequate training and supervision of Chief Randall.[51]

### B.  Arkansas State Law Claims

Mr. Calvin also brings his supervisory-liability claims against the City Council members under ACRA.[52]  Defendants argue that the "analysis of [Mr.] Calvin's claims under 42 U.S.C. § 1983 and [ACRA] is the same."[53]  Mr. Calvin does not rebut or otherwise address this statement in his Response Brief.[54]  Defendants appear to be correct, considering that ACRA itself invites courts to "look for guidance to state and federal decisions interpreting" § 1983.  The Arkansas Supreme Court has regularly accepted that invitation.[55]  Whatever (if any) minor differences there may be in the applicable framework are immaterial at this stage of the litigation.  Mr. Calvin's supervisory-liability pleading failures discussed above apply equally here.

---

[50] *Krigbaum*, 808 F.3d at

[51] *See Marsh*, 902 F.3d at 757 n.8.

[52] Compl. (Doc. 2) ¶¶ 1, 26.

[53] Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 10) at 4 n.2 (first citing *McCraven v. Sanders*, No. 07–6019, 2008 WL 4671836, 2008 U.S. Dist. LEXIS 84707 (W.D. Ark. Oct. 21, 2008); then citing *Thompson v. Mask*, No. 4:11-cv-00379, 2012 WL 12895727 (E.D. Ark. Oct. 5, 2012)).

[54] Mr. Calvin's supervisory-liability counter-arguments are all entirely based on federal law.  *See* Br. in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 12) at 4–7.

[55] *E.g.*, *Harmon v. Payne*, 2020 Ark. 17, at 5, 592 S.W.3d 619, 623; *City of Little Rock v. Alexander Apartments, LLC*, 2020 Ark. 12, at 10 n.6, 592 S.W.3d 224, 231; *Shepherd v. Washington Cnty.*, 331 Ark. 480, 490, 962 S.W.2d 779, 783 (1998).

Finally, the City Council members argue that Mr. Calvin's common law negligence claims are barred by Arkansas's immunity statute, Ark. Code Ann. § 21-9-301. That statute provides immunity "from liability and from suit for damages" to all "municipal corporations . . . and all other political subdivisions of the state . . . except to the extent that they may be covered by liability insurance."[56] The Arkansas Supreme Court has interpreted the statute as covering city employees for negligent acts.[57] Mr. Calvin stated in his Complaint that "[t]o the extent they are covered by insurance, the Defendants have waived sovereign immunity for the negligence claims."[58] Mr. Calvin's Response Brief again made clear his understanding that the City Council members were immune "for the tort claims for damages over their liability insurance."[59]

In their Reply Brief, the City Council members attached a declaration from Mayor Green which states:

> I conducted a review of City records to determine if the City had in place any form of insurance policy that would provide coverage for any injuries allegedly sustained as a result of the incident referred to in [Mr. Calvin's Complaint]. After that review was completed, I determined that the City did not maintain any policy of liability insurance that would have covered the incident. The City did not, and does not to this date, maintain any general liability insurance that would cover a negligence claim.
>
> There was no general liability insurance policy, or any other insurance policy, issued to the City of Menifee or any of its subdivisions or employees, or in which the City was named as an insured, that would have provided any coverage for the incident that occurred on November 21, 2020.[60]

---

[56] *Id.* § 21-9-301(a); *see* Compl. (Doc. 2) ¶ 6 (describing the City of Menifee as "a political subdivision of the State of Arkansas").

[57] *Smith v. Brt*, 363 Ark. 126, 130, 211 S.W.3d 485, 489 (2005) (citing *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992)).

[58] Compl. (Doc. 2) ¶ 31.

[59] Br. in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 12) at 8.

[60] Ex. 1 (Mayor Green decl.) to Reply in Supp. of Defs.' Mot. to Dismiss (Doc. 14-1) ¶ 4 (emphasis added).

The City Council members believe Mayor Green's declaration should put an end to Mr. Calvin's negligence claims.[61]  The Court disagrees.

The most significant issue with Mayor Green's declaration is that it is not properly before the Court.  Even assuming the declaration would count as material "embraced by the pleadings,"[62] the City Council members did not present the declaration until after Mr. Calvin had already responded to their legal arguments.  The City Council members clearly knew that liability insurance was an issue when they filed their Motion to Dismiss.[63]  Yet, they waited until they filed their Reply Brief to present Mayor Green's declaration.  That left Mr. Calvin without an opportunity to contest the factual accuracy of the declaration, or to argue that the Court should not consider the declaration at this stage of the litigation.  For this reason, the declaration is out of bounds for purposes of the Motion to Dismiss.

In any event, Mayor Green's declaration may not carry the day for the City Council members even if the Court were to consider it at this time.  It is true that the City Council members are able to take advantage of § 21-9-305's grant of immunity because Mr. Calvin's allegations relate to the City Council members' actions while "performing their official duties for the [City of Menifee] at the time of their alleged acts of negligence . . . ."[64]  But the City Council members' statutory immunity does not apply "to the extent that they may be covered by liability insurance."[65]  Mayor Green's declaration only establishes that *the City* did not have an insurance policy on record which covered the City Council members.  The declaration makes no mention as to whether the

---

[61] *See* Reply in Supp. of Defs.' Mot. to Dismiss (Doc. 14) at 4.

[62] *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

[63] Not only was the insurance issue raised in Mr. Calvin's Complaint, but Defendants raised it in their opening brief. *See* Compl. (Doc. 2) ¶ 31; Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 10) at 6–7.

[64] *Cousins v. Dennis*, 298 Ark. 310, 312, 767 S.W.2d 296, 297 (1989)

[65] Ark. Code Ann. § 21-9-301.

individual City Council members have their own applicable insurance policies.  It is currently unclear to the Court whether this makes a difference in the immunity analysis.

The City Council members' (implicit) argument—that the immunity question boils down to whether the City had insurance—is understandable.  In *Smith v. Brt*, while addressing a claim that a city's mayor was "personally liable," the Arkansas Supreme Court said that § 21-9-301 granted the mayor immunity "except to the extent that *the City* is covered by liability insurance . . . ."[66]  *Brt* certainly seems to indicate that only insurance policies covering the City are relevant under § 21-9-301.[67]  But in cases before and after *Brt*, the Arkansas Supreme Court has indicated that, when a government official is sued in his or her individual capacity, *any* insurance policy covering that government official is relevant.[68]  Complicating matters further is that while the two lines of cases seem to state different rules, they cite back and forth to each other as though they

---

[66] *Brt*, 363 Ark. at 130, 211 S.W.3d at 489 (emphasis added).  When stating this rule, the Arkansas Supreme Court cited *Helena-West Helena School District v. Monday*, 361 Ark. 82, 204 S.W.3d 514 (2005), *Carlew v. Wright*, 365 Ark. 208, 148 S.W.3d 237 (2004), and *Spears v. City of Fordyce*, 351 Ark. 305, 92 S.W.3d 38 (2002).  But these cases do not purport to limit the range of relevant insurance policies in the way that *Brt* may have done.

In *Monday*, the Arkansas Supreme Court stated that "an *employee or* a district can be sued to the extent that *applicable coverage* exists under a policy of insurance."  361 Ark. at 86, 204 S.W.3d at 517 (emphasis added).  The *Monday* Court supported this rule with a citation to a case in which the Arkansas Supreme Court reiterated the rule that "state employees are not immune from suit to the extent *they* may be covered by liability insurance . . . ."  *Id.*, 204 S.W.3d at 517 (citing *Carter v. Bush*, 296 Ark. 261, 753 S.W.2d 534 (1988)).  And in *Carter*, it was the government officers' "coverage under policies which [they] had in force on their own personal automobiles" that was at issue.  296 Ark. at 263, 753 S.W.2d at 535.  In *Carlew*, the Arkansas Supreme Court said that a county judge was "entitled to immunity . . . to the extent *he* is covered by liability insurance."  356 Ark. at 216, 148 S.W.3d at 242 (emphasis added).  *Spears*, however, is less clear as to whether the individual government officer's insurance policy is relevant because the only insurance-policy arguments in that case related to the city.  *See* 351 Ark. at 308, 92 S.W.3d at 40.

[67] *See also Repking v. Lokey*, 2010 Ark. 356, at 12, 377 S.W.3d 211, 220; *City of Farmington v. Smith*, 366 Ark. 473, 478, 237 S.W.3d 1, 5 (2006).

[68] *City of Little Rock v. Dayong Yang*, 2017 Ark. 18, at 5, 509 S.W.3d 632, 635; *Waire v. Joseph*, 308 Ark. 528, 535, 825 S.W.2d 594, 599 (1992); *see also Monday*, 361 Ark. at 86, 204 S.W.3d at 517; *Carlew*, 356 Ark. at 216, 148 S.W.3d at 242; *Doe v. Baum*, 348 Ark. 259, 272, 72 S.W.3d 476, 483 (2002); *Deitsch v. Tillery*, 309 Ark. 401, 409, 833 S.W.2d 760, 763–64 (1992).

stand for one uniform proposition.[69]   Thankfully, the Court need not wade into this debate at present.

## C.  Leave to Amend

In his Response to Defendants' Motion to Dismiss, Mr. Calvin requested leave to amend his Complaint if the Court were otherwise going to dismiss his individual-capacity claims against the City Council members.[70]   The City Council members did not address this request in their Reply Brief.   While the Court "should freely give leave [to amend] when justice so requires,"[71] Mr. Calvin does "not have an absolute or automatic right to amend."[72]   Indeed, there is a fair argument that Mr. Calvin has failed "to preserve the right to amend" his Complaint because he did not "'submit the proposed amendment' . . . nor did he proffer the substance of such an amended complaint."[73]   "Instead, [Mr. Calvin] merely included [one line] at the end of his response to [the City Council members'] motion to dismiss"[74] requesting "in the alternative that he be given leave to amend his complaint."[75]   The Eighth Circuit has held that denial of leave to amend in such circumstances is a proper exercise of a district court's discretion.[76]

---

[69] *Compare City of Farmington*, 366 Ark. at 478, 237 S.W.3d at 5 (stating that "employees enjoy immunity . . . except to the extent that the city is covered by liability insurance") (citing *Carlew*, 356 Ark. 208, 148 S.W.3d 237), *with Carlew*, 356 Ark. at 216, 148 S.W.3d at 242 (stating that a county judge was "entitled to immunity . . . to the extent *he* is covered by liability insurance") (emphasis added).   For a more recent example, compare *Dayong Yang*, 2017 Ark. 18, at 5, 509 S.W.3d at 635 with *Repking*, 2010 Ark. 365, at 12, 377 S.W.3d at 220.   *See also supra* note 66 (discussing *Brt* and the cases the *Brt* Court cited).

[70] Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 11) at 1; Br. in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 12) at 8.

[71] Fed. R. Civ. P. 15(a)(2).

[72] *In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 884 (8th Cir. 2009) (quoting *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005)).

[73] *Id.* (quoting *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985)).

[74] *Id.*

[75] Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 11) at 1; Br. in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 12) at 8; *see also Novastar*, 579 F.3d at 884.

[76] *Novastar*, 579 F.3d at 884–85; *Clayton*, 778 F.2d at 460.

But the Court "may not ignore the Rule 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits . . . ."[77]  These considerations, coupled with the fact that the City Council members did not object to Mr. Calvin's request for leave, lead the Court to conclude that granting Mr. Calvin leave to amend his Complaint is the proper course.  Mr. Calvin will have twenty-one days from the date of this Order to file an amended Complaint.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.  Mr. Calvin may file an amended complaint within twenty-one days of the date of this Order.  If Mr. Calvin does not file an amended complaint, the Court will dismiss his § 1983 and ACRA individual-capacity claims against the City Council members.  The Court will not dismiss Mr. Calvin's common law negligence claims at this time.[78]

IT IS SO ORDERED this 21st day of March 2022.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[77] *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009) (discussing post-judgment motions for leave to amend).

[78] Nothing in this Order should be construed as passing on the merits of Mr. Calvin's negligence claims.  The City Council members did not argue that Mr. Calvin failed to state a negligence claim on the merits.  Their only argument was statutory immunity.  *See* Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 10) at 6–7; Reply in Supp. of Defs.' Mot. to Dismiss (Doc. 14) at 4.

14