IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

GERRY CALVIN                                                              PLAINTIFF

v.                          Case No. 4:21-cv-00224-LPR

JOHN RANDALL, individually and in his
official capacity, *et al.*                                              DEFENDANTS

<u>ORDER</u>

      This is a police misconduct case.   Plaintiff Gerry Calvin alleges both unconstitutional and tortious acts were visited upon him by Menifee Police Chief John Randall.[1]   Mr. Calvin seeks redress not just from Chief Randall, but also from the City of Menifee, the Mayor of Menifee, and members of the Menifee City Council.[2]   Chief Randall disputes Mr. Calvin's allegations of misconduct,[3] and all the Defendants dispute Mr. Calvin's entitlement to redress from them.[4] Before the Court are two motions for summary judgment, each filed by a different set of Defendants.[5]   Between the two motions, the Defendants have asked for judgment in their favor on all claims brought by Mr. Calvin.[6]

      For the reasons discussed in the rest of this Order, the Court GRANTS IN PART and

---

[1] Compl. (Doc. 2) at ¶ 1.

[2] *Id.* at ¶¶ 4–10.

[3] Chief Randall's Answer (Doc. 8) at ¶ 16.

[4] City of Menifee's Answer (Doc. 5) at ¶ 34; Chief Randall's Answer (Doc. 8); Individual Capacity Defs.' Answer (Doc. 22).

[5] The Motion filed by the City of Menifee and the official-capacity Defendants addresses all the official-capacity claims brought by Mr. Calvin.   City of Menifee's Mot. for Summ. J. (Doc. 36).   The other Motion was filed by the Defendants that were sued in their individual capacities.   Unsurprisingly, it addresses the individual-capacity claims brought by Mr. Calvin.   Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39).

[6] City of Menifee's Mot. for Summ. J. (Doc. 36); Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39).

DENIES IN PART both motions.   Defendants are entitled to summary judgment on most claims. But the following claims have genuine disputes of material fact that require proceeding to a jury: (1) the individual-capacity § 1983 claim against Chief Randall based on Mr. Calvin's Fourteenth Amendment substantive due process rights; (2) the mirror-image ACRA claim; and (3) the assault claims against Chief Randall and the City of Menifee.

Each of the surviving claims arises from one particular interaction between Chief Randall and Mr. Calvin.   And the historical facts surrounding this interaction are in hot dispute. Mr. Calvin alleges that Chief Randall intentionally tried to hit Mr. Calvin with his truck,[7] then threatened multiple times to put a bullet in Mr. Calvin's head, and then began to raise a firearm.[8] Mr. Calvin has put forth enough facts to support these allegations such that a reasonable jury could agree that this interaction occurred as Mr. Calvin alleged.   Whether Mr. Calvin prevails at trial depends on what the jury actually finds to have occurred as a matter of historical fact.   But Mr. Calvin has done enough for now to get to a jury on the three categories of claims set out above.

## I. THRESHOLD ISSUES

Before diving into the facts, it is worth spending a few moments separating the wheat from the chaff in this case.   Mr. Calvin originally brought a large number of claims against a large number of Defendants.[9]   But, in a March 2022 Order, the Court got rid of the individual-capacity § 1983 and ACRA claims against the City Council members.[10]   And, at the August 2023 summary

---

[7] Chief Randall's vehicle is referred to varyingly as a "car" or a "truck" throughout the record.   It appears that Chief Randall was driving a large SUV on the night of the incident. Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 129.   The Court will refer to Chief Randall's vehicle as a "truck."

[8] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 62.

[9] Compl. (Doc. 2).

[10] Order Granting in Part and Den. in Part Defs.' Mot. to Dismiss (Doc. 15) at 14.

judgment hearing, Mr. Calvin conceded that summary judgment should be granted to Defendants on several other claims.[11]   Ultimately, as Mr. Calvin has acknowledged, the only still-live claims are "a 1983 substantive due process claim against Randall" in his "individual capacity," "an ACRA substantive due process claim against Randall in his individual capacity," "[a]nd . . . a bunch of tort claims . . . against a bunch of different people including Randall but also others."[12]

The § 1983 and ACRA individual-capacity claims against Chief Randall require further discussion below.   So do the intentional tort claims brought against Chief Randall and others. But there are a set of tort claims that can be quickly disposed of on state law immunity grounds— to wit, the negligence claims.   In the Court's March 2022 Order, the Court set forth a fairly detailed explanation of Ark. Code Ann. § 21-9-301.[13]   Instead of repeating that legal discussion here, the Court simply adopts that discussion by reference.   Under this Arkansas statute and associated Arkansas caselaw, Defendants are clearly immune from tort liability and damages with respect to the negligence claims unless they have applicable liability insurance coverage.[14]

According to undisputed record evidence, none of the Defendants are covered by liability insurance for any damages that might arise from the negligence claims in this case.[15]   So the

---

[11] Mot. for Summ. J. Hr'g Tr. at 1:43:11–1:43:44, 1:58:52–2:00:28.

[12] *Id.* at 1:59:40–2:00:28.

[13] Order Granting in Part and Den. in Part Defs.' Mot. to Dismiss (Doc. 15) at 10–13.

[14] Ark. Code Ann. § 21-9-301(b); *Smith v. Brt*, 363 Ark. 126, 130, 211 S.W.3d 485, 489 (2005); *Helena-W. Helena Sch. Dist. v. Monday*, 361 Ark. 82, 85–86, 204 S.W.3d 514, 516–17 (2005); *Carlew v. Wright*, 356 Ark. 208, 216, 148 S.W.3d 237, 242 (2004); *Spears v. City of Fordyce*, 351 Ark. 305, 308–10, 92 S.W.3d 38, 40–41 (2002).

[15] Ex. 3 (Aff. of Terry Coleman in Official Capacity) to City of Menifee's Mot. for Summ. J. (Doc. 36-3) at ¶ 3; Ex. 1 (Aff. of Chief Randall) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-1) at ¶¶ 3–4; Ex. 2 (Aff. of Terry Coleman in Individual Capacity) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-2) at ¶ 3; Ex. 3 (Aff. of Rita Davis) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-3) at ¶ 3; Ex. 4 (Aff. of Derrick Hammond) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-4) at ¶ 3; Ex. 5 (Aff. of Ronnie Williams) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-5) at ¶¶ 3–4; Pl.'s Resp. to Individual Capacity Defs.' Statement of

statute, and its immunity, fully applies.   Perhaps in recognition of this fact, Mr. Calvin did not even address Defendants' immunity arguments in his Responses to their Motions.[16]   Bottom line: the negligence claims are out.[17]

With the underbrush of this case cleared away, we can now turn to the facts section that will inform the legal analysis of the remaining claims.

## II.  BACKGROUND FACTS

On summary judgment, the Court is supposed to consider the record in a very particular way.   First, the Court adopts and considers all undisputed facts.   Second, as to each genuinely disputed fact that is material to the outcome of the case, the Court adopts and considers the version of the fact that is most favorable to the non-moving party and the reasonable inferences from that fact that are most favorable to the non-moving party—in this case, the Plaintiff.[18]   A fact is genuinely disputed if a reasonable jury could decide the fact in favor of either a plaintiff or a defendant.[19]   In light of the foregoing, the story presented below is the most Plaintiff-friendly rendition of the facts that a reasonable jury could conclude occurred.   It bears emphasizing that, at trial, the jury might or might not agree with important parts of this rendition.   And that could

---

Material Facts Not in Dispute (Doc. 48) at ¶ 12.

[16] Br. in Supp. of Pl.'s Resp. to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 49) at 17–21; Br. in Supp. of Pl.'s Resp. to City of Menifee's Mot. for Summ. J. (Doc. 52) at 20–24.

[17] In his summary judgment papers, Mr. Calvin seems to suggest he brought an "abuse of power" tort claim.   Br. in Supp. of Pl.'s Resp. to. City of Menifee's Mot. for Summ. J. (Doc. 52) at 26.   Even assuming such a claim exists in Arkansas—which is quite an assumption—Mr. Calvin did not plead one.   There is a single reference to "abuse of power" in the Complaint. Compl. (Doc. 2) at ¶ 23.   And in context that single reference cannot possibly be read as making a stand-alone claim.   In the tort section, Mr. Calvin expressly brings several tort claims; abuse of power is not one of them.   *Id.* at ¶¶ 29–33.

[18] *See Quinn v. St. Louis Cnty.*, 653 F.3d 745, 750 (8th Cir. 2011).

[19] *See Liberty Ins. Corp. v. HNTB Corp.*, 87 F.4th 886, 888 (8th Cir. 2023).

well change the complexion of this case.   But, for now, here's the story.

On the evening of November 21, 2020, Mr. Calvin was hosting a sweet sixteen birthday party for his cousin at his property.[20]   Mr. Calvin's property contains a large metal building that apparently also serves as Mr. Calvin's home.[21]   The building can hold hundreds of people, and is equipped with a sound system, wet bar, and stripper pole.[22]   The party was taking place in this large metal building—that is, the party was taking place in Mr. Calvin's home.[23]

Mr. Calvin's property is located at 59 Cadron Creek Road, Plummerville, Arkansas.[24]   At about 7:45 p.m. on the night in question, Chief Randall received a phone call concerning loud music in the Cadron Creek area.[25]   After sending a different officer to investigate the noise complaint, Chief Randall eventually drove to Mr. Calvin's property to further investigate.[26]   (At this point in time, the Menifee City Council had been dealing with an ongoing problem of loud

---

[20] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 57–58.   Whether the party was really a sweet sixteen for a family member is genuinely disputed, although that dispute is perhaps not material.   Defendants have some evidence to show that Mr. Calvin rented out the property for parties.   Ex. 8 (Second Dep. of Gary Green) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-8) at 106–07.   At these parties, there often was a cover fee, alcohol, strippers, and up to 1500 people. *Id.* at 106–17.   To locals, 59 Cadron Creek Road (the address of Mr. Calvin's property) was known by many names, including VIP Spot, Gabby's Place, and Party Zone. *Id.* at 107–08; Ex. 9 (Dep. of Chief Randall) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-9) at 85–87. Chief Randall described Mr. Calvin's property as a "club."   Ex. 9 (Dep. of Chief Randall) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-9) at 75, 87.   Because the Court must adopt the most pro-plaintiff version of the record that a reasonable jury could, the Court proceeds as if the party at issue was a family sweet sixteen and not a more commercial and adult-oriented event.   Indeed, because Mr. Calvin denies all of the foregoing by way of his deposition testimony, the Court assumes for purposes of summary judgement that none of the facts in this footnote (concerning the use of the property for commercial parties) are historically accurate.

[21] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 117–18.

[22] Pl.'s Resp. to Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 48) at ¶ 4.   Again, *see supra* note 20 for the other view of the so-called sweet sixteen.

[23] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 57–58.

[24] Pl.'s Resp. to Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 48) at ¶ 3.

[25] *Id.* at ¶ 12.

[26] *Id.* at ¶ 13; Ex. 1 (Aff. of Chief Randall) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-1) at 5.

gatherings at this property.[27])   Upon entering the property, Chief Randall heard the loud music.[28]

Mr. Calvin's property has a gate one must traverse to enter.[29]   The gate is generally open during the day but closed at night.[30]   When closed, the gate only opens (1) if Mr. Calvin activates it to let a car in, or (2) if a car already on the property approaches the gate to leave.[31]   In any event, on the night in question, the gate was open.[32]   Chief Randall drove through the open gate onto the property, and then continued driving down the private driveway.[33]

Chief Randall drove toward the large metal building (aka, Mr. Calvin's home) and observed a person drinking beer outside the building.[34]   He then drove around the building and took pictures of vehicles parked near the building.[35]   Mr. Calvin took notice of this.   Specifically, he noticed Chief Randall's black truck drive through the property's gate and start to circle the

---

[27] Pl.'s Resp. to Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 48) at ¶ 3.

[28] *Id.* at ¶ 13.

[29] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 59.

[30] *Id.* at 129.

[31] *Id.* at 59–61.

[32] *Id.* at 61.

[33] *Id.* at 60–61; Ex. 9 (Dep. of Chief Randall) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-9) at 62–63.

[34] Ex. 9 (Dep. of Chief Randall) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-9) at 101–02.   In one of the Statements of Undisputed Fact, the Defendants assert Chief "Randall observed a person drinking beer outside and three people quickly duck inside the building."   Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 41) at ¶ 14.   Mr. Calvin made a blanket denial of this assertion of fact, Pl.'s Resp. to Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 48) at ¶ 14, but he did not explain precisely what he denied.   Instead, he pointed to his own deposition at page 131.   Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 131.   But that portion of the deposition does not include evidence that would counter the assertion that Chief Randall saw someone drinking.   *Id.*   Indeed, that portion of the deposition acknowledges that there were women standing outside of the large metal building.   *Id.*   At most, this portion of the deposition counters Chief Randall's assertion that the people outside the building quickly ducked inside the building when they saw him approach.   *Id.*

[35] Pl.'s Resp. to Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 48) at ¶ 15.

property.[36]   Mr. Calvin went outside to see what was going on.[37]

As he rounded a corner of the building, Mr. Calvin saw Chief Randall (whom he knew from prior interactions) outside of the black truck.[38]   At this moment, Chief Randall jumped back into the truck, put it into gear with the door open, and drove it toward Mr. Calvin.[39]   It is not clear how fast the vehicle was moving, but Mr. Calvin described it as "lung[ing]" toward him.[40]   Mr. Calvin had to jump out of the way of the vehicle to avoid being hit by the open door.[41]   Indeed, according to former Mayor Gary Green, who was watching this incident unfold over the security cameras inside the metal building, Chief Randall actually swerved his vehicle toward Mr. Calvin.[42] When asked if Chief Randall had to swerve to avoid hitting Mr. Calvin, Mr. Green explained that Chief Randall "didn't swerve to avoid him," but instead "swerved toward him."[43]   It was Mr. Green's impression that Chief Randall "was trying to scare" Mr. Calvin.[44]

This was not the end of the interaction.   It is a reasonable inference from the record that Chief Randall stopped the truck after Mr. Calvin jumped out of the way.[45]   Mr. Calvin then hollered at Chief Randall, exclaiming "[h]ey, what are you doing?"[46]   Chief Randall responded

---

[36] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 83; Pl.'s Resp. to Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 48) at ¶ 17.

[37] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 131.

[38] *Id.* at 61–62, 130–131.

[39] *Id.* at 62.

[40] *Id.* at 84.

[41] *Id.* at 70, 84.

[42] Ex. 8 (Second Dep. of Gary Green) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-8) at 41–42.

[43] *Id.* at 42.

[44] *Id.*

[45] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 62.

[46] *Id.*

by asking Mr. Calvin, "[d]o you want me to put a bullet in your head?"[47]   Chief Randall also threatened to take Mr. Calvin to jail.[48]   Mr. Calvin retorted, "I'm just asking you, what are you doing on private property?"[49]   Chief Randall then repeated (at least two more times) his seemingly rhetorical question: "Do you want me to put a bullet in your head?"[50]

While asking this question, Chief Randall "reached down inside of the door panel and got his gun and came up with it."[51]   Mr. Calvin saw the gun.[52]   At this point, Mr. Calvin "turned around and left."[53]   Accordingly, Mr. Calvin never saw whether Chief Randall actually pointed the gun at him, and the record does not reveal whether Chief Randall actually pointed the gun at Mr. Calvin.[54]

The entire incident—from the time Chief Randall drove through the gate to the time he exited the property—lasted "five or six minutes."[55]   Mr. Calvin acknowledges that this interaction

---

[47] *Id.*

[48] *Id.* at 63–64.

[49] *Id.* at 62.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*; Pl.'s Resp. to Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 48) at ¶ 21.

[55] Pl.'s Resp. to Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 48) at ¶ 26.   The Court wishes to once again emphasize that this rendition of the facts is genuinely disputed.   Defendants have presented testimonial evidence that Chief Randall did not swerve his truck toward Mr. Calvin, but actually swerved away from Mr. Calvin when Mr. Calvin was aggressively running at Chief Randall's vehicle.   Ex. 9 (Dep. of Chief Randall) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-9) at 69.   Defendants have also presented testimonial evidence that Chief Randall's threat to shoot Mr. Calvin was only in response to Mr. Calvin aggressively running at Chief Randall's truck, and that the threat was explicitly conditioned on Mr. Calvin not stopping his aggressive approach. *Id.* at 69–70.   The problem for Defendants—at this stage of the litigation—is the existence of testimony by both Mr. Calvin and Mr. Green that directly controverts (1) the notion that Mr. Calvin was running (or otherwise aggressively approaching) the truck, and (2) the assertion that Chief Randall was trying to swerve away from Mr. Calvin.   Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 70, 84; Ex. 8 (Second Dep. of Gary Green) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-8) at 41–42.   The Court has

did not result in any physical injuries.[56]   But he says the incident caused him mental and emotional

suffering.[57]   Specifically, he testified in his deposition that he "can't sleep at night," feels like he

has "to watch [his] back all the time," and "has anxiety" because of this incident.[58]   In a December

2020 "citizen complaint" stemming from this November 2020 incident, Mr. Calvin noted that,

during the incident, he "was afraid for [his] life."[59]

## III. LEGAL ANALYSIS

The Court begins with the claims that fail at this stage and then moves to the claims that

proceed.

### A.   *The Outrage and Invasion of Privacy Claims*

Let's take outrage first.   In Arkansas, the elements of the tort of outrage are as follows: (1)

the defendant "intended to inflict emotional distress or knew or should have known that emotional

distress was the likely result of his conduct"; (2) the conduct was "extreme and outrageous,"

"beyond all possible bounds of decency," and   "utterly intolerable in a civilized community"; (3)

"the actions of the defendant were the cause of the plaintiff's distress"; and (4) "the emotional

distress sustained by the plaintiff was so severe that no reasonable person could be expected to

endure it."[60]   Even on the most pro-Plaintiff read of this record, Chief Randall—and thus all the

Defendants—are entitled to judgment as a matter of law on these claims.   Here's why.

---

no choice at this juncture but to assume the facts are as Mr. Calvin and Mr. Green assert.

[56] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 86.

[57] *Id.*

[58] *Id.* at 86, 108–12.

[59] Ex. 5 (Aff. of Ronnie Williams) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-5) at 8–10.

[60] *Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 957, 69 S.W.3d 393, 403–04 (2002).

The only potentially extreme and outrageous conduct here was Chief Randall driving the truck at Mr. Calvin such that Mr. Calvin had to jump out of the way of the open truck door.[61] Although Chief Randall's threats to shoot Mr. Calvin were unprofessional and undoubtedly frightening (assuming Plaintiff's version of events), recall that there is no evidence Chief Randall pointed his gun at Mr. Calvin.[62]   Without such evidence, Chief Randall's threats do not rise to the level of extreme and outrageous conduct beyond all bounds of decency and utterly intolerable in a civilized society.

So, the question becomes whether Chief Randall's driving toward Mr. Calvin caused Mr. Calvin emotional distress so severe that no reasonable person could be expected to endure it. There is no evidence in the record from which a reasonable jury could answer this question in the affirmative.   It is true that Mr. Calvin says that, at the time of the incident in question, he was scared for his life.[63]   It is also true that Mr. Calvin says that he now "can't sleep at night," "watch[es] his back all the time," and "has anxiety."[64]   But recall the brevity of the interaction at issue here.[65]   Being scared for one's life for a few moments is not on its own sufficient to find emotional distress severe enough that no reasonable person could be expected to endure it.[66]   And Mr. Calvin's vague and general comments about not being able to sleep at night and having to

---

[61] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 70.

[62] Pl.'s Resp. to Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 48) at ¶ 21.

[63] Ex. 5 (Aff. of Ronnie Williams) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-5) at 8.

[64] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 86, 108–12.

[65] Pl.'s Resp. to Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 48) at ¶ 26.

[66] *See Schmidt v. Stearman*, 98 Ark. App. 167, 171, 178–79, 253 S.W.3d 35, 39, 44–45 (2007) (holding that the plaintiff did not sustain "emotional distress so severe that no reasonable person could be expected to endure it" despite the plaintiff offering proof that he "feared for [his] li[fe].").

watch one's back don't supply the missing severity.[67]   There is no evidence that Mr. Calvin got treatment from a doctor or specialist for emotional distress.[68]   Mr. Calvin has stated that he does not take any medications for such distress, for his sleeping problems, or for anxiety.[69]   The Court does not question (at this stage) whether Mr. Calvin had or has emotional distress from the incident in question.   But no reasonable jury could conclude that the distress was or is severe enough to meet the fourth element of Arkansas's tort of outrage.[70]

We move on to the invasion of privacy tort.   While Arkansas recognizes four subspecies of invasion of privacy, the only one potentially at issue here is intrusion upon seclusion.[71]   A person commits this tort if he "intentionally intrudes, physically or otherwise, upon the solicitude or seclusion of another . . . if the intrusion would be highly offensive to a reasonable person."[72] On this record, no reasonable jury could conclude that Chief Randall's coming onto Mr. Calvin's property to address a noise complaint "would be highly offensive to a reasonable person."[73]   Chief

---

[67] *See FMC Corp. v. Helton*, 360 Ark. 465, 486, 202 S.W.3d 490, 505 (2005) ("While Appellees testified about suffering sleep loss, loss of appetite, and anxiety, such distress is the type that reasonable people may be faced with throughout their lives.").

[68] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 111–12.

[69] *Id.*

[70] One might ask why the Court is analyzing the fourth element of this tort when the individual-capacity Defendants only challenged the second element of the tort.   Br. in Supp. of Individual Capacity Defs.' Mot. for Summ. J. (Doc. 40) at 15.   It is because the Court reads the principal brief filed by the City of Menifee and the official-capacity Defendants to challenge Plaintiff's claim on all elements of the tort, including the fourth element.   Br. in Supp. of City of Menifee's Mot. for Summ. J. (Doc. 37) at 25.   That global challenge allows the Court to grant summary judgment to all Defendants based on the Court's conclusion that no reasonable jury could find the fourth element satisfied on the record as it currently stands.

[71] *Dodrill v. Arkansas Democrat Co.*, 265 Ark. 628, 637, 590 S.W.2d 840, 844 (1979); *Dunlap v. McCarty*, 284 Ark. 5, 9, 678 S.W.2d 361, 363–64 (1984).

[72] *McMullen v. McHughes L. Firm*, 2015 Ark. 15, 14, 454 S.W.3d 200, 209 (2015) (quoting *Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 719, 74 S.W.3d 634, 644 (2002)).

[73] *Id.*

Randall was investigating a noise complaint.[74]   The front gate to Mr. Calvin's property was open.[75]   Chief Randall drove in and then drove along the driveway toward the principal building on the property, which was also Mr. Calvin's home.[76]   Nothing about a police officer coming to one's property, driving through an open gate, and driving up one's driveway to one's house in order to discuss or investigate a noise complaint would be highly offensive to a reasonable person.[77]

Mr. Calvin's strongest argument here is that Chief Randall also took pictures of several vehicles around the building.[78]   But recall that the entire episode lasted only five-to-six minutes.[79]   What that tells us is that the picture-taking was very brief.   And it was not of people, or of the interior of the building, or of the interior of any vehicles.[80]   Whether or not the picture-taking was constitutionally appropriate, it was not such an egregious act of intrusion upon seclusion to be highly offensive to the reasonable person.[81]   Consequently, Chief Randall and the other Defendants are entitled to judgment as a matter of law on these claims.

---

[74] Pl.'s Resp. to Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 48) at ¶¶ 12–13.

[75] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 60.

[76] *Id.* at 117–18; Ex. 9 (Dep. of Chief Randall) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-9) at 62–63.

[77] *See Burdyshaw v. State*, 69 Ark. App. 243, 246–48, 10 S.W.3d 918, 920–21 (2000) (holding that an officer did not violate the appellant's rights when he entered the appellant's property through an open gate, drove toward the appellant's home up a long driveway, and took photographs of tire tracks on the appellant's property.).

[78] Pl.'s Resp. to Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 48) at ¶ 15.

[79] *Id.* at ¶ 26.

[80] *Id.* at ¶ 15.

[81] *See Burdyshaw*, 69 Ark. App at 247, 10 S.W.3d at 920–21 ("The presence of 'no trespassing' signs in this country without a locked or closed gate make the entry along the driveway for the purposes above described not a trespass . . . .") (quoting *United States v. Ventling*, 678 F.2d 63, 66 (8th Cir. 1982)).

### B.  The § 1983, ACRA, and Assault Claims

Let's start with the § 1983 and ACRA substantive due process claims against Chief Randall in his individual capacity.   As will become apparent in a few moments, the Court is letting the § 1983 claim move forward to trial.   The ACRA claim is, at worst for Mr. Calvin, a mirror-image claim.[82]   So it would move through as well, and the Court need not decide at this time whether the ACRA substantive due process claim applies a less stringent test than the § 1983 substantive due process claim.

Although the Court acknowledges that the incident at issue was not a high-speed chase, the Court nevertheless concludes that the "intent-to-harm" standard set out in *County of Sacramento v. Lewis* applies to Mr. Calvin's § 1983 substantive due process.[83]   The Court believes this to be the import of the *en banc* majority's analysis in *Terrell v. Larson*.[84]   The incident in the instant case arose in the context of on-scene police action and involved quick decision-making in a fluid situation.   Under *Terrell*, that's reason enough for the *Lewis* standard to apply.[85]   So, to get past summary judgment, Mr. Calvin must have provided evidence from which a reasonable jury could conclude that (1) Chief Randall had an intent to cause harm to Mr. Calvin unrelated to a legitimate law enforcement objective, and (2) Chief Randall's conduct violated one of Mr. Calvin's fundamental rights that is "deeply rooted in this nation's history and tradition . . . and

---

[82] *See Grayson v. Ross*, 369 Ark. 241, 249, 253 S.W.3d 428, 434 (2007) (addressing whether the "conscious indifference" standard or the more demanding federal standard applies to ACRA claims).

[83] 523 U.S. 833, 854 (1998).

[84] *See* 396 F.3d 975, 978–79 (8th Cir. 2005), *as corrected* (Mar. 23, 2005) ("By contrast, the intent-to-harm standard most clearly applies 'in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation.'") (quoting *Neal v. St. Louis County Bd. of Police Comm'rs*, 217 F.3d 955. 958 (8th Cir. 2000)).

[85] *See id.* at 978.

implicit in the concept of ordered liberty . . . such that neither liberty nor justice would exist if they were sacrificed."[86]

This record contains such evidence. A reasonable jury could conclude based on Mr. Calvin's and Mr. Green's testimonies—and reasonable inferences therefrom—that: (1) Chief Randall saw Mr. Calvin slowly and passively walking toward him outside the large metal building that served as Calvin's home;[87] (2) Chief Randall then got in his truck, left the door open and intentionally drove at Mr. Calvin with some not-insignificant speed;[88] and (3) Chief Randall intended to hit Mr. Calvin with the still-open truck door. Point (1) and (2) come almost directly from Mr. Calvin's and Mr. Green's testimonies. Point (3) can be inferred because there is evidence that Mr. Calvin had to jump out of the way to avoid getting hit by the open truck door.[89] To paraphrase from the Eighth Circuit Model Criminal Jury Instructions, a jury may but is not required to infer that a person intends the natural and probable consequences of acts knowingly done.[90] Whether or not the Court thinks it would be the right way to interpret the evidence, a trial jury would not be unreasonable for finding that Chief Randall intentionally tried to drive his truck such that the open door would hit Mr. Calvin.[91]

---

[86] *Id.* at 976, 978 n.1 (quoting *Moran v. Clarke*, 296 F.3d 638, 651 (8th Cir. 2002)).

[87] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 61–62, 131; Ex. 8 (Second Dep. of Gary Green) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-8) at 41–42.

[88] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 62; Ex. 8 (Second Dep. of Gary Green) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-8) at 42.

[89] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 70.

[90] Eighth Cir. Model Criminal Jury Instr. § 7.05.

[91] The fact that Chief Randall subsequently threatened (three times) to shoot Mr. Calvin in the head could be considered by the jury to be evidence of Chief Randall's intent to harm Mr. Calvin by driving into him. Of course, that's only on a very pro-Plaintiff (but not unreasonable) read of the record. In any event, and to be crystal clear, the threats to shoot Mr. Calvin are not themselves conscience-shocking behavior under *Lewis*.

The foregoing is enough to establish a conscience-shocking intent to harm.   To be clear, attempting to drive a truck at some pace into a non-aggressive citizen is so outrageous and egregious as to be conscience-shocking enough to meet the first prong of the *Lewis* test.[92]   But what about the second prong of the test?   Did this conduct violate a fundamental right of the kind set out in *Glucksberg*?[93]   The Court need not address this question at this time.   Neither set of Defendants argued in their summary judgment motions that this second prong was a barrier to Mr. Calvin's claim.   The Court is not an advocate and will not develop arguments that the parties either intentionally or unintentionally overlooked.[94]

It is true that, on Page 9 of their opening brief, the individual-capacity Defendants set out the two prongs of the substantive due process test—one of the prongs being "that Chief Randall violated one of [Mr. Calvin's] fundamental rights."[95]   But these Defendants never analyze that *Glucksberg*-related prong.[96]   Instead, these Defendants aim their fire at the other prong—whether "[Chief] Randall's conduct 'shocks the conscience.'"[97]   It is thus no surprise that these Defendants conceded the *Glucksberg*-related prong at oral argument.[98]

---

[92] *See Lewis*, 523 U.S. at 854.

[93] *See id.* at 847 n.8.

[94] *Cooper v. First Gov't Mortg. & Invs. Corp.*, 238 F. Supp. 2d 50, 62 (D.D.C. 2002) ("The court is not an advocate, and thus may not fill in the argument where the plaintiffs' motion fails to do so.").

[95] Br. in Supp. of Individual Capacity Defs.' Mot. for Summ. J. (Doc. 40) at 9.

[96] *Id.* at 9–10.

[97] *Id.*

[98] Mot. for Summ. J. Hr'g Tr. at 1:23:49–1:24:38. ("Again, the plaintiff's going to have to show the violation of some fundamental right and behavior that shocks the conscience.   I think he gets there to the extent that hitting someone with a vehicle is deadly force and so he's managed to hit on a right to life as a right.   It's at least implicit in the [B]ill of [R]ights.   So then the question becomes whether this shocks the conscience and whether on the record there really is a fact question about whether Chief Randall that night was meaning to actually run over [Mr.] Calvin or even just make him think he was going to run over him.").

The City of Menifee and the official-capacity Defendants did not even mention the *Glucksberg* fundamental rights prong in their opening brief.[99]   At Page 8 of the Reply Brief, these Defendants note that one of the two prongs of the applicable substantive due process test requires an analysis of whether the right asserted by a plaintiff is within the *Glucksberg* fundamental rights rubric.[100]   But a new argument cannot be raised in a party's Reply Brief.[101]   And even putting that aside, these Defendants merely state the *Glucksberg*-related prong; they do not do any analysis of how the prong applies to Mr. Calvin's claims, nor do they suggest that the claims fail because of this prong.[102]   These Defendants did not mention the *Glucksberg*-related prong at oral argument, and they did not take issue with the individual-capacity Defendants' concession of that prong.[103]

Defendants' final argument for summary judgment on the § 1983 and ACRA claims is a qualified immunity argument.[104]   The argument goes something like this.   Even assuming Chief Randall's conduct turned out to be a substantive due process violation, he is protected from suit and liability by the doctrine of qualified immunity unless it was clearly established—at the time

---

[99] Br. in Supp. of City of Menifee's Mot. for Summ. J. (Doc. 37) at 9–10.

[100] Reply Br. to Resp. to City of Menifee's Mot. for Summ. J. (Doc. 56) at 8.

[101] *Mahaney v. Warren Cnty.*, 206 F.3d 770, 771 n.2 (8th Cir. 2000) ("[W]e generally do not consider issues raised for the first time . . . in a reply brief.").

[102] Reply Br. to Resp. to City of Menifee's Mot. for Summ. J. (Doc. 56) at 7–10.   To the extent Defendants are trying to say that the requirement of a *Glucksberg* right logically limits the applicable analysis to the Fourth Amendment, that argument runs contrary to Eighth Circuit precedent.   The Eighth Circuit is quite clear that *Lewis*-type substantive due process claims are appropriate where Fourth Amendment claims would have been appropriate except for the absence of a seizure.   *See Helseth v. Burch*, 258 F.3d 867, 872 n.4 (8th Cir. 2001); *Slusarchuk v. Hoff*, 346 F.3d 1178, 1181 (8th Cir. 2003).

[103] Mot. for Summ. J. Hr'g Tr. at 1:08:39–1:21:33, 2:01:38–2:01:46.

[104] Br. in Supp. of Individual Capacity Defs.' Mot. for Summ. J. (Doc. 40) at 10–11.

16

he committed the purportedly bad acts—that his conduct was violative of the Constitution.[105]   The point of the qualified immunity doctrine is to confine liability to only those government officials who intentionally violate the Constitution or are so grossly incompetent that they fail to follow clear constitutional dictates.[106]   A constitutional rule is clearly established in the Eighth Circuit if there is—at the time of the officials' purportedly bad acts—on-point Supreme Court precedent, on-point Eighth Circuit precedent, or a consensus of on-point precedent from other circuits that identifies the rule and makes clear it applies to the situation at hand.[107]   The fit between the precedent and the circumstances in the case at bar does not need to be perfect.[108]   But it needs to be close enough that all but the most incompetent officials would be on notice that the rule applies to the conduct in which they purportedly engaged.[109]   This analysis cannot take place at too high a level of generality, but it need not take place at the finest level of granularity.[110]

Given the disputed historical facts in this case, and the requirement at this stage to adopt the most pro-Plaintiff version of the facts that could be found by a reasonable jury, Chief Randall only gets qualified immunity if it was not clearly established by November 21, 2020, that he violated the Constitution by intentionally trying to drive his truck at a not-insignificant speed into a person suspected of violating a noise ordinance (and maybe running a club without a business

---

[105] *Id.*

[106] *See Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[107] *Hanson as Tr. for Layton v. Best*, 915 F.3d 543, 548 (8th Cir. 2019).

[108] *See D.C. v. Wesby*, 583 U.S. 48, 64 (2018).

[109] *See id.* ("existing precedent must place the lawfulness of the particular arrest 'beyond debate.'") (quoting *Ashcroft*, 563 U.S. at 741).

[110] *See id.*

license) while that person was passively and non-aggressively walking toward his truck.[111]   The Court concludes that *Lewis*, *Terrell*, and *Helseth v. Burch* are enough to defeat qualified immunity at this stage.   Those cases (and the cases cited by those cases) clearly establish that a government official cannot constitutionally commit an act in which he intends to harm a person with his vehicle where the purpose to cause harm is entirely unrelated to any legitimate law enforcement purpose.[112]   On the most pro-Plaintiff view of the record that is exactly what happened here.[113]

To be clear, the Court's conclusion does not forever foreclose the application of qualified immunity to this case.   All the Court is saying now is that there are genuine disputes of historical fact which must be decided by a jury before the Court can make its ultimate qualified immunity decision.   The Eighth Circuit has, on numerous occasions, explained the proper way forward in such circumstances.[114]   At the end of the trial, the Court will first ask (by way of special interrogatories) the jury to settle genuine disputes of fact that are material to the qualified immunity question.   Once the jury settles the genuinely disputed and material historical facts, the Court will then render a qualified immunity decision.   If the Court grants qualified immunity at that time, the § 1983 and ACRA claims will not go the jury.   If the Court denies qualified immunity at that time, the § 1983 and ACRA claims will go to the jury.   It is worth noting—for the benefit of both

---

[111] Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 84; Ex. 8 (Second Dep. of Gary Green) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-8) at 41–42; Pl.'s Resp. to Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 48) at ¶¶ 12–13; Ex. 9 (Dep. of Chief Randall) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-9) at 75.

[112] *See Lewis*, 523 U.S. at 836; *Terrell*, 396 F.3d at 976; *Helseth v. Burch*, 258 F.3d 867, 871 (8th Cir. 2001). The fortuity that Mr. Calvin wasn't killed or physically injured—because he managed to jump out of the way fast enough— doesn't affect whether Chief Randall knew the Constitution frowned on attempting to drive a truck into Mr. Calvin.

[113] Defendants' qualified immunity arguments did not encompass the *Glucksberg*-related prong of the substantive due process test.   Br. in Supp. of Individual Capacity Defs.' Mot. for Summ. J. (Doc. 40) at 10–11.

[114] *Littrell v. Franklin*, 388 F.3d 578, 585 (8th Cir. 2004); *Lampkins v. Thompson*, 337 F.3d 1009, 1014 (8th Cir. 2003); *Ellison v. Lesher*, 796 F.3d 910, 918 (8th Cir. 2015).

parties—that the Court envisions many ways in which the jury might reasonably settle the historical facts that would give the Defendants a very strong basis for qualified immunity. But that must await an actual jury doing its actual work. The Court can't make those decisions for the jury now.

Finally, we come to the assault claims. The elements of this tort are as follows: (1) the defendant acted in such a manner as to create a reasonable apprehension of immediate harmful or offensive contact upon the plaintiff; (2) the defendant intended to cause that apprehension; and (3) the plaintiff was actually put in that apprehension.[115] Before getting to the merits, however, there's a threshold question raised by some of the Defendants: did Mr. Calvin sufficiently plead an assault claim?[116]

In the "Tort Claims" section of the Complaint, Mr. Calvin expressly pled the tort of negligence, the tort of invasion of privacy, and the tort of outrage.[117] But he did not plead the tort of assault.[118] Still, he did state in this section that he "adopt[ed] by reference the allegations contained in" all previous paragraphs.[119] And earlier in the Complaint he had adverted to a claim for the tort of assault.[120] Specifically, in the first numbered paragraph of his Complaint, Mr. Calvin expressly stated that he was bringing a claim for the "common law tort of . . . assault."[121] Then, in paragraph 23, Mr. Calvin expressly stated that Chief Randall's actions

---

[115] Ark. Model Jury Instr., Civil AMI 417.

[116] Reply Br. to Resp. to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 57) at 9.

[117] Compl. (Doc. 2) at ¶¶ 29–33.

[118] *Id.*

[119] *Id.* at ¶ 29.

[120] *Id.* at ¶¶ 1, 23.

[121] *Id.* at ¶ 1.

"amounted to . . . assault."[122]   Under the notice pleading standards in the Federal Rules of Civil

Procedure, Mr. Calvin did enough (just barely) to bring an assault claim against Chief Randall in

his individual and official capacities.[123]   (And, of course, the official-capacity claim is, in reality

and by operation of law, a claim against the City of Menifee.[124])

On the merits of the assault claims, the City's and official-capacity Defendants' sole

argument in their opening summary judgment brief was that Chief Randall's threats to shoot

Mr. Calvin in the head plus the Chief's concurrent retrieval of the gun from his truck door did not

place Mr. Calvin in reasonable apprehension of immediate harmful or offensive contact.[125]   In the

Reply Brief, the official-capacity Defendants use more capacious language, such as "Mr. Calvin

was not placed in apprehension by the events of November 21, 2020" and "the undisputed evidence

fails to show that Mr. Calvin was ever placed in apprehension by anything Chief Randall did on

November 21, 2020."[126]   But the Reply clearly ties these general statements to its discussion and

analysis of the purported threat to shoot Mr. Calvin.[127]

---

[122]   *Id.* at ¶ 23.

[123]   *See Shurgard Storage Centers v. Lipton-U. City, LLC*, 394 F.3d 1041, 1046 (8th Cir. 2005) ("Under the liberal notice pleading standards of the Federal Rules of Civil Procedure, [the plaintiff] was only required to give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)).

[124]   *Furlow v. Belmar*, 52 F.4th 393, 406 (8th Cir. 2022) ("When a public employee is sued in his official capacity, the plaintiff is suing 'only the public employer and therefore must establish the municipality's liability for the alleged conduct.'") (quoting *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016)).

[125]   Br. in Supp. of City of Menifee's Mot. for Summ. J. (Doc. 37) at 24.

[126]   Reply Br. to Resp. to City of Menifee's Mot. for Summ. J. (Doc. 56) at 22–23.

[127]   The Reply brief also argues that the City (including the official-capacity Defendants) are immune from suit and liability for assault under Ark. Code. Ann. § 21-9-301.   Reply Br. to Resp. to City of Menifee's Mot. for Summ. J. (Doc. 56) at 22–23 (citing *Williams v. Mannis*, 889 F.3d 926 (8th Cir. 2018)).   The Court acknowledges that the Arkansas Supreme Court (and the Arkansas Court of Appeals) has been less than fully consistent on the question whether immunity under this law applies to any intentional torts.   *See* Tort Immunity for Arkansas Cities and Towns, Their Officials and Employees, Arkansas Municipal League (November 2021), available at (https://static.ark.org/eeuploads/arml/TortImunity_Nov2012_WEB.pdf) (last checked March 29, 2024), at 6–7 (collecting and analyzing cases).   Still, the weight of the precedent from the Arkansas Supreme Court strongly

The Court agrees, for the reasons set out in the briefing just discussed, that Chief Randall's threats to shoot Mr. Calvin aren't enough to make out a tort claim for assault.   If Mr. Calvin had evidence that Chief Randall pointed the gun at him, things would be different.   But there's no such evidence in this record.[128]   Still, that doesn't completely end the matter.   Recall that a reasonable jury could conclude from this record that Chief Randall intentionally drove his truck at Mr. Calvin such that Mr. Calvin had to jump out of the way to avoid being hit by the still-open truck door.[129]   That sequence of events easily meets all the prongs of the assault test.[130]   It is true that Mr. Calvin did not say all this in his Responsive Briefs, but that omission can be attributed to the Defendants' original challenge focusing on the shooting threat.[131]

So, to be clear, the claims for the tort of assault proceeds against Chief Randall in his individual and official capacities.   That means the corresponding claim also proceeds against the City of Menifee.   But the claim does not proceed against any of the other Defendants.   There is no evidence to suggest the other Defendants took any part in or played any role leading to the purported assault.

---

suggests the law only applies to non-intentional torts, despite the fact that the language of the law contains no such limitation.   *See id.*; *Battle v. Harris*, 298 Ark. 241, 245, 766 S.W.2d 431, 433 (1989); *Doe v. Baum*, 348 Ark. 259, 272, 72 S.W.3d 476, 483 (2002); *W. Memphis Sch. Dist. No. 4 of Crittenden Cnty. v. Cir. Ct. of Crittenden Cnty.*, 316 Ark. 290, 295, 871 S.W.2d 368, 371 (1994).

[128]   Pl.'s Resp. to Individual Capacity Defs.' Statement of Material Facts Not in Dispute (Doc. 48) at ¶ 21.

[129]   Ex. 6 (Dep. of Gerry Calvin) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-6) at 70, 84; Ex. 8 (Second Dep. of Gary Green) to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 39-8) at 41–42.

[130]   *See* Ark. Model Jury Instr., Civil AMI 417.

[131]   The individual-capacity Defendants did not challenge the assault tort claim at all in their opening Summary Judgment Brief.   Br. in Supp. of Individual Capacity Defs.' Mot. for Summ. J. (Doc. 40).   But assuming the Court nonetheless took note of their Reply arguments on the assault claim, those arguments are unavailing.   Reply Br. to Resp. to Individual Capacity Defs.' Mot. for Summ. J. (Doc. 57) at 9–10.   The only new argument that would be added to the mix is a qualified immunity argument.   But the answer there is the same answer the Court gives above on the § 1983/ACRA qualified immunity question.   *See* discussion *supra* at 16–19.   Defendants may ultimately prevail on qualified immunity grounds.   But first the jury needs to settle important questions of historical fact.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART both motions for summary judgment.   Defendants are entitled to summary judgment on all claims discussed in this Order except: (1) the individual-capacity § 1983 claim against Chief Randall based on Mr. Calvin's Fourteenth Amendment substantive due process rights; (2) the mirror-image ACRA claim; and (3) the assault claims against Chief Randall and the City of Menifee.

IT IS SO ORDERED this 29th day of March 2024.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE